## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**GULF COAST BANK AND TRUST COMPANY**                          **CIVIL ACTION**

**VERSUS**                          **NO. 10-2618**

**STATESMAN BUSINESS ADVISORS, LLC, SCOTT ACTKINSON, AND PETER CHIU**                          **SECTION "K"(4)**

## ORDER AND OPINION

Before the Court is the motion in limine filed on behalf of plaintiff Gulf Coast Bank and Trust Company ("GCBC") (Doc. 61). Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, GRANTS the motion.

### Background

GCBC, a division of a Louisiana chartered bank, loaned money to various companies secured by the customers' accounts receivable assets. In an attempt to insure the continuing security of the loans, GCBC contracted with Statesman Business Advisors, LLC ("Statesman"), located in Houston, Texas, to perform "field audit exams" on GCBC's customers and issue "collateral review reports" concerning the accounts receivable assets.

GCBC entered into a loan agreement with Stinson Petroleum Company ("SPC") secured by SPC's accounts receivables assets. Pursuant to its contract with GCBC, Statesman performed various field exam audits and issued a number of collateral review reports regarding SPC. In the wake of SPC's default on its loan, GCBC filed this suit against Statesman, Scott Actkinson and Peter Chiu seeking damages which "it asserts would have been avoided had Statesman performed

according to its 'best efforts' and in a 'competent professional manner' and had the Statesman CPAs acted according to the standards of their profession."  Doc. 61-1, p. 4, citing Doc. 61, Exhibit A, Section V1.  Mr. Actkinson and Mr. Chiu are certified public accountants employed by Statesman who performed various work in connection with field exam audits of SPC and/or prepared the subsequent collateral review reports.

Plaintiff has filed a motion in limine seeking an order that (1) Texas law governs the resolution of GCBC's claims of negligence against the defendants; (2) the "audit interference rule" applies, and (3) the defendants are barred from introducing evidence relating to the conduct of third-party tortfeasor SPC to apportion fault to it.

Law and Analysis

The "Collateral Review Engagement Master Agreement for Gulf Coast Business Credit" signed by GCBC and Statesman provides, in pertinent part that "[t]his Agreement shall be governed by the laws of the State of Texas . . .."  Doc. 61-2, Exhibit A, p. 4.  Plaintiff assert that the choice-of-law provision dictates that Texas law applies to plaintiff's tort claims.  The Court disagrees.

It is axiomatic that a federal court exercising diversity jurisdiction applies the choice-of-law rules of the forum state.  *Cantu v. Jackson National Life Insurance Company*, 579 F.3d 434, 437 (5th Cir. 2009).  Under Louisiana law contracting parties "generally" have "the freedom to choose which state's law will govern disputes arising out of the contract."  *Cherokee Pump & Equipment, Inc. v. Aurora Pump*, 38 F.3d 246, 250 (5th Cir. 1994).   Here however, nothing in the parties' choice -of-law clause suggests that clause should apply to claims arising in tort. In the absence of the choice-of -law clause determining the law to be applied to plaintiff's tort claims, the Court looks to Louisiana Civil Code Article 3543 for instruction concerning Louisiana's choice- of- law rules.  Article 3543

provides in pertinent part: "[i]ssues pertaining to standards of conduct and safety are governed by the law of the state in which the conduct that caused the injury occurred, if the injury occurred in that state or in another state whose law did not provide for a higher standard of conduct." Comment (f) of the Revision Comments - 1991 to Article 3543 states that the quoted paragraph:

> [P]rovides that, if the injurious conduct and the resulting injury occur in different states, the law of the state of conduct applies, if the law of the state of injury "did not provide for a higher standard of conduct." Phrased affirmatively, this means that the law of the state of conduct applies if it provides for the same or a higher standard of conduct than does the state of injury.

In this case the injurious conduct and the resulting injury occurred in different states. Although Statesman employees visited the SPC's Laurel, Mississippi location to exeute field work for the collateral review reports GCBC hired Statesman to perform, the actual work of compiling and analyzing the information for those reports, i.e., the acts alleged to have caused the alleged injury to GCBC, occurred at Statesman's office in Texas. While the injurious conduct occurred in Texas, GCBC's resulting injury occurred in Louisiana. Because the injurious conduct and the resulting injury occurred in different states, the Court must examine whether either state requires a higher standard of conduct or whether the standards for conduct are the same.

Under Louisiana law, the duty imposed on an accountant is that of using ordinary skill and care in the exercise of the particular profession. See *Roger v. Dufrene*, 613 So.2d 947, 949 (La. 1993). To put it another way, the duty imposed on an accountant is that of "reasonable diligence." *Id.* Similarly, under Texas law an accountant is required to "exercise the degree of care, skill, and competence that reasonable members of the profession would exercise under similar circumstances." See *Ling v. BDA&K Business Services, Inc.*, 261 S.W.3d 341, 347 (Tex. App.– Dallas 2008). Thus, both Texas and Louisiana have the same standard of conduct for accountants.

3

Plaintiff contends that Texas mandates a higher standard of conduct  because Texas has adopted the audit interference rule.  Under that rule, "the contributory negligence of the client is a defense only where it has contributed to the accountant's failure to perform the contract and report the truth."  *Greenstein, Logan & Company v. Burgess Marketing, Inc.,* 744 S.W. 2d 170, 190 (Tex. App.– Waco 1987).  Because the audit interference rule involves the assessment of contributory negligence, an affirmative defense, the rule does not impact the  standard of conduct required of accountants, but rather relates to the issue of loss distribution.  In an a claim for accounting negligence, the rule restricts  the acts and omissions of a client that can constitute contributory negligence to only those that "contributed to the accountant's failure to perform the contract and report the truth."  As noted in *Greenstein*, the rule "recognizes the duty of the accountant to comply with generally accepted auditing standards, and at the same time, recognizes the client's duty not to negligently interfere with the audit."  *Id.*  Because the rule does not impact the duty imposed on the accountant, it is not properly considered in determining whether Texas or Louisiana requires a a higher standard of conduct for accountants.  Because Louisiana and Texas apply similar standards of conduct for accountants there is no conflict.

That determination  does not end the choice- of- law issue.  Louisiana's choice- of-law matrix specifically addresses the law to be applied to issues of loss distribution.  Where, as here, the injured party and the party causing the injury were domiciled in different states, Civil Code Article 3544 provides in pertinent part:

> (b) when the injury and the conduct that caused it occurred in different states, by the law of the state in which the injury occurred provided that  (I) the injured person was domiciled in that state, (ii) the person who caused the injury should have foreseen its occurrence in that state, and (iii) the law of that state provided for a higher standard of financial protection for the injured person than did the

4

law of the state in which the injurious conduct occurred.

No one disputes that any injury to GCBC occurred in Louisiana, that plaintiff is domiciled in Louisiana, and that Statesman could not foresee that any injury to GCBC would occur in Louisiana. Therefore, the Court need only examine the third prong of Article 3544(2)(b), i.e., whether Louisiana law provides for a higher standard of financial protection for GCBC than does the law of Texas.   Defendants urge that Louisiana provides a higher standard of financial protection for plaintiff because it applies  pure comparative negligence while Texas law bars  recovery by a plaintiff whose contributory negligence exceeds 50%. If that difference constituted the sole factor in analyzing which state provided a higher standard of financial protection for plaintiff, defendant's position would be well taken.   However, if, as plaintiff asserts, the audit interference rule, as announced in *Greenstein*,  continues to be valid in Texas, then its effect must be considered in determining which state provides a higher standard of financial protection for plaintiff.

Defendants contend that the audit interference rule has been abrogated in Texas by virtue of that state's  adoption of a comparative negligence doctrine and point to the evolution of Texas's Civil Practices & Remedies Code §33.001 et seq as further evidence that the audit interference rule is no longer viable in Texas.   Defendant's position lacks merit.   There is nothing inherently inconsistent between the audit interference rule and the doctrine of comparative negligence.   The audit interference rule simply narrows the scope of client acts and omissions which can be considered to be "negligent" for purposes of distributing loss.   Nor does Texas's statutory scheme for comparative negligence compel a conclusion that the audit interference rule no longer applies in suits alleging accounting negligence.

Prior to September 1, 1973 a finding of contributory negligence barred recovery by a plaintiff of any recovery.

5

> Article 2212a VATS, effective September 1, 1973 provides that contributory negligence shall not bar recovery in an action to recover damages for *negligence resulting in death or injury* if such negligence is not greater than the negligence of the defendant, but any damages allowed shall be diminished in proportion to the amount of negligence attributed to the party recovering.

*Pedernales Electric Cooperative, Inc. v. Schultz*, 583 S.W.2d 882, 884 (Tex. App.– Waco 1979) (emphasis added).  Nothing in Article 2212a restricted its application to only certain claims of negligence.  Rather, it applied to all claims for "negligence resulting in death or injury to a person or property." Thus, the clear wording of Article 2212a does not exclude its application to claims of professional negligence. If the Texas legislature had wanted to exclude the application of Article 2212a to claims of professional negligence, it undoubtedly knew how to do so.

Thereafter, in 1985 the Texas legislature codified Article 2212 in the Civil Practices & Remedies Code §33.001 et seq.  That codification did not alter the reach of the comparative negligence statute which still applied to actions "to recover damages for negligence resulting in death or injury to a person or property."  Tex. Civ. Prac. & Rem. Code §33.001 (1985).  In 1987 the Texas Legislature amended the comparative negligence statute to read:

> In an action in which a claimant seeks damages for harm other than personal injury, property damage, or death, arising out of any action grounded in negligence, including by not limited to negligence relating to any professional services rendered by an architect, attorney, certified public accountant, real estate broker or agent, or engineer, licensed by this state, a claimant may recover damages only if his percentage of responsibility is less than or equal to 50 percent.

Tex. Civ. Prac. & Rem. Code §33.001(c)(1987).  The amendment's specific statement  that the rule applies to "negligence relating to professional services rendered by an . . .accountant . . ." does not require a conclusion that the rule did not previously apply to accountants, among others.  It simply

6

clarifies that the 51% rule applies to accountants and other professionals.  Nothing in the plain language of the Texas comparative negligence statutory scheme supports a conclusion that *Greenstein* and the audit interference rule have been abrogated.

Moreover, the continuing validity of the audit interference rule in other comparative negligence states has been recognized.  *Board of Trustees of Community College District No. 508 v. Coopers & Lybrand*, 208 Ill. 2d 259, 269 (Ill. 2003) ("application of audit interference doctrine in the accounting malpractice context is in accord with recognized principles of comparative fault"); *Stroud v. Arthur Anderson & Co.*, 37 P.3d 783, 789 (Okla. 2001) (approving jury instruction that in determining plaintiff's negligence jury could only consider negligence interfering with provision of professional services); *Fullmer v. Wohfeiler & Beck*, 905 F.2d 1394, 1397 (10th Cir. 1990) (plaintiff's "negligence in an accounting malpractice case is only a defense, or the basis for an offset where the plaintiff's conduct contributed to the accountant's failure to perform his work or to furnish accurate accounting information.").  In *Board of Trustees of Community College District No. 508*, the Court opined that recognition of the audit interference doctrine was consistent with "general tort principles applicable to actions against service providers and, in the accounting malpractice context, consistent with the Restatement (Third) of Torts."  The Tenth Circuit continued, "[a]s stated in the Restatement (Third) of Torts:

> [i]n a case involving negligent rendition of a service . . . a factfinder does not consider any plaintiff's conduct that created the condition the service was employed to remedy.  Restatement (Third) of Torts: Apportionment of Liability §7, Comment *m*, at 70 (2000).

*Board of Trustees of Community College District No. 508 v. Coopers & Lybrand*, 208 Ill. 2d at 271.

Having determined that nothing in Texas's comparative negligence scheme is inconsistent with application of the audit interference rule, the Court rejects defendants' contention that

*Greenstein* has been overruled by operation of the comparative negligence statutory scheme. Furthermore, the Court is not persuaded that the lack of Texas cases applying the rule after the adoption of the comparative negligence scheme requires a finding that *Greenstein* has been overruled.  Nor does the Court find the unpublished decision in *Richardson v. Cheshier & Fuller, L.L.P.*, 2008 WL 5122122 (E.D. Tex. 2008) to be controlling precedent.  In *Richardson*, an appeal from a bankruptcy court's apportionment of liability in a liquidation proceeding, the district court rejected the bankruptcy trustee's contention that because the bankruptcy judge failed to find that the debtor's conduct interfered or prevented the debtor's accountant from properly performing its duties, debtor's conducted should not have reduced the accounting firm's liability.  Without an analysis of the legal concepts involved, the district court simply concluded "Chapter 33 of the Texas Civil Practice and Remedies Code, not the audit interference rule applies in this case."  Given this Court's opinion that the audit interference rule is not inconsistent with Texas' s comparative negligence statute, the Court does not accept *Richardson* as dispositive of the issue.  Therefore, for the reasons cited herein above the Court concludes that the audit interference rule remains viable under Texas law in an action for accounting negligence.  Based on the availability of the audit interference rule, the Court concludes that plaintiff benefits from a higher standard of financial protection under Texas law than it  does the pure comparative negligence provision of Louisiana law. Therefore, the Court orders that Texas law on the issue of comparative negligence and the audit inference rule shall apply in this case.

Liability of SPC

Defendants , in their  summary of material facts in the pretrial order, identity a number of

8

acts committed by SPC.  They also state in the pretrial order that "[u]nder the relevant comparative fault statute, liability for any damages is to be apportioned between (I) SPC (which defrauded all of the parties in this proceeding), (ii) GCBC, and (iii) Statesman."  Doc. 65, p. 13.

Plaintiff seeks an order barring defendants from introducing any evidence relating to SPC's conduct for the purpose of apportioning fault to SPC because defendants failed to timely identify and designate SPC as a "responsible third party" as required by Tex. Civ. Prac. & Rem. Code Ann. §33.004.   Under Texas law, in a suit based on negligence, the trier of fact "shall determine the percentage of responsibility" for  "(1) each claimant; (2) each defendant; (3) each settling person; and (4) each responsible third party who has been designated under Section 33.004." Tex. Civ. Prac. & Rem. Code Ann. §33.003.  Section 33.004(a)  provides that "[a] defendant may seek to designate a person as a responsible third party by filing a motion for leave to designate that person as a responsible party . . . on or before the 60th day before the trial date unless the court finds good cause to allow the motion to be filed at a later date."  Defendants do not allege that at any time prior to the filing of the pretrial order they designated or indicated that they intended to rely upon the acts or omissions of SPC to reduce their liability, if any, to plaintiff.  However, they do urge that the 60 day requirement of §33.004 is inapplicable to this diversity case because it is  procedural, not substantive in nature.

No extensive analysis of whether §33.004 is procedural or substantive is necessary.  Even assuming it is substantive in nature, the Court grants plaintiff's motion in limine to the extent it seeks to bar evidence of SPC's acts or omissions to establish SPC's fault.  Federal Rule of Civil Procedure 8(c) lists numerous affirmative defenses, including contributory negligence,  which must be specifically pleaded and also includes a residuary clause requiring that "any other matters

constituting an avoidance or affirmative defense" must be "set forth affirmatively."  Although SPC is not a party to this litigation, the Court concludes that Rule 8(c)'s requirement that contributory negligence be affirmatively pleaded is sufficiently broad to require that defendants affirmatively plead their  attempt to apportion fault to SPC.

The purpose of Rule 8(c) "is to give the opposing party notice of the affirmative defense and a chance to argue why it should not apply."  *Pasco v. Knoblaugh*, 566 F.3d 572, 578 (5th Cir. 2009). Therefore, generally the failure to plead an affirmative defense is deemed a waiver of the defense. *Morris v. Homco International, Inc.*, 853 F.2d 337, 342 (5th Cir. 1988).  The "[t]echnical failure to comply precisely with Rule 8(c) is not fatal" where the defendant raises the defense in a manner that does not unfairly surprise the plaintiff.  *Allied Chemical Corporation v. Mackay*, 695 F.2d at 854, 856 (5th Cir. 1983).  However, "[a] defendant should not be permitted to lie behind a log and ambush a plaintiff with an unexpected defense."   *Ingraham v. United States*, 808 F.2d 1075, 1079 (5th Cir. 1987) (internal quotation and citation omitted).

Defendants have not disputed plaintiff's assertion that the first statement  that they intended to have fault apportioned to SPC to reduce plaintiff's recovery appeared in the pretrial order. Defendant's  statement that it seeks to have fault apportioned to SPC comes late in this case, after the close of discovery, and only several weeks before trial is scheduled to commence.  Plaintiff states that it "has been surprised and prejudiced by the lack of fair notice."  Doc. 68-2, p. 2. Specifically plaintiff notes that during pretrial discovery when it asked defendants to [i]dentify each and every document, exhibit, other tangible item or demonstrative aid that relates to any defense that you may assert, regardless of whether you intend to offer the document as evidence at trial or otherwise present it to the court" the defendants did not identify "the pleadings from court

proceedings GCBC brought against the impecunious third party Leon Stinson . . ., yet they now list those pleadings as trial exhibits . . . and refer to them in their Pretrial Order statement as supporting its contention that SPC and its principals is proportionately at fault for GCBC's injuries." Doc. 68-2, p. 2 n. 1. Defendants have not disputed that statement. The Court is persuaded that plaintiff has been unfairly surprised and prejudiced by the lack of fair notice of defendant's intent to seek to have some degree of fault apportioned to SPC. Accordingly, the Court grants plaintiff's motion in limine and precludes defendants from introducing evidence related to the conduct of third-party tortfeasor Stinson Petroleum Co. for the purpose of having fault apportioned to SPC.

New Orleans, Louisiana, this 22nd day of October.

_____
STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE